IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMMERA FOX,                                        07-CV-1307-BR

        Plaintiff,                               OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


RORY JOSEPH LINERUD
P.O. Box 1105
Salem, OR 97308-1105
(503) 587-8776

        Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158


1   -   OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**L. JAMALA EDWARDS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2113

          Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Tammera Fox brings this action for judicial review
of a final decision of the Commissioner of Social Security
denying her application for continuing disability insurance
benefits (DIB) pursuant to Title II of the Social Security Act.
This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **AFFIRMS** the
decision of the Commissioner and **DISMISSES** this matter.


<u>**ADMINISTRATIVE HISTORY**</u>

     Plaintiff initially filed her application for DIB on
August 23, 1995, alleging disability since October 6, 1993.
Tr. 39.[1]  On August 28, 1996, the Commissioner found Plaintiff
was disabled as of October 6, 1993, because of a combination of
impairments that an Administrative Law Judge (ALJ) found to be
severe.  These impairments included "residuals of a head injury

---

     [1] Citations to the official transcript of record filed by
the Commissioner on February 20, 2008, are referred to as "Tr."

2   -  OPINION AND ORDER

and motor vehicle accident"; daily headaches; organic personality syndrome; vestibular dysfunction; and cognitive impairment with confusion, dizziness, and memory loss.  Tr. 40.

On April 13, 2004, the Social Security Administration notified Plaintiff that the Commissioner, after reviewing Plaintiff's medical impairments, determined she was no longer disabled as of July 2000 and that her benefits would cease immediately.  Tr. 59-61.  Plaintiff requested reconsideration. On August 10, 2004, the Appeals Council notified Plaintiff that it concluded Plaintiff had "withheld or concealed information material to the finding of disability," and, therefore, Plaintiff was not entitled to benefits as of May 1, 1998, "the date the evidence shows you were concealing information."  Tr. 64-66.

On April 20, 2006, an ALJ held a hearing at which Plaintiff was represented by an attorney.  Tr. 572-611.  Plaintiff, three lay witnesses, and two medical experts testified at the hearing. On January 19, 2007, the ALJ held a continuation hearing at which Plaintiff also was represented by an attorney.  Tr. 612-48. Plaintiff, a medical expert, and a vocational expert (VE) testified at the continuation hearing.  On April 4, 2007, the ALJ issued an opinion in which he found Plaintiff was not entitled to DIB based on a finding that her medical impairments had improved to the extent that she no longer had a severe impairment or combination of impairments.  Tr. 15-28.  That decision became the

3  -  OPINION AND ORDER

final decision of the Commissioner on July 17, 2007, when the
Appeals Council denied Plaintiff's request for review.  Tr. 7-9.

## BACKGROUND

Plaintiff was 29 years old on the date her disability began,
42 years old at the time of the first hearing before the ALJ, and
43 at the time of the continuation hearing.  Tr. 29.  Plaintiff
is a high-school graduate with two years of college.  Tr. 40,
484.

Plaintiff alleges continuing disability due to severe and
chronic headaches, mental confusion, deficiencies in memory,
vertigo, and depression.  Tr. 579-88.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 20-24.

## STANDARDS

"[A]t all times, the burden is on the claimant to establish
[her] entitlement to disability insurance benefits." *Parra v.
Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)(quotation and citation
omitted).  *See also Patti v. Schweiker,* 669 F.2d 582, 586 (9th
Cir. 1982)(*rev'd* on other grounds).  To meet this burden, a
claimant must demonstrate her inability "to engage in any

4   -   OPINION AND ORDER

substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted

or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).  After a claimant is

found to be disabled and entitled to benefits, the Commissioner

must periodically review that claimant's continued entitlement to

such benefits.  20 C.F.R. § 404.1594(a).  The Commissioner must

determine whether a recipient's impairments are medically

improved and, if so, whether that impacts the recipient's ability

to work.  20 C.F.R. § 404.1594(b).  "Medical improvement" is

defined as

> any decrease in the medical severity of your
> impairment(s) which was present at the time
> of the most recent favorable medical decision
> that you were disabled or continued to be
> disabled.  A determination that there has
> been a decrease in medical severity must be
> based on changes (improvement) in the
> symptoms, signs and/or laboratory findings.

20 C.F.R. § 404.1594(b)(1).  To determine whether medical

improvement has occurred, the Commissioner uses the most recent

favorable medical decision as a "point of comparison."  20 C.F.R.

§ 404.1594(b)(7).  "Our determination regarding whether your

disability continues will be made on the basis of the weight of

the evidence."  20 C.F.R. § 404.1594(b)(6).

   The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.

5   -  OPINION AND ORDER

42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**I.   Regulatory sequential evaluation for review and termination of disability benefits.**

The Commissioner has developed a sequential inquiry to determine whether a claimant continues to be disabled within the

6   -  OPINION AND ORDER

meaning of the Act.  20 C.F.R. § 404.1594(f).  *See also Dixon v. Barnhart,* 324 F.3d 997 (8th Cir. 2003).  The Social Security regulations require an eight-step analysis to determine whether a claimant's eligibility for DIB has ended.  20 C.F.R. § 404.1594(f).

In Step One, the claimant does not continue to be disabled if the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1).

In Step Two, the claimant continues to be disabled if the claimant's impairments meet or equal the severity of a listed impairment.  20 C.F.R. § 404.1594(f)(2).

In Step Three, if the claimant's impairments no longer meet or equal the severity of a listed impairment, the Commissioner must determine whether the claimant has medically improved.  If the claimant has medically improved as shown by a decrease in medical severity, the Commissioner must consider Step Four.  If the claimant has not medically improved, the Commissioner must consider Step Five.  20 C.F.R. § 404.1594(f)(3).

In Step Four, if the claimant has medically improved, the Commissioner must determine whether the improvement is related to the claimant's ability to work; "*i.e.*, whether [] there has been an increase in the residual functional capacity."  20 C.F.R. § 404.1594(f)(4).  If the improvement is unrelated to the claimant's ability to work, the Commissioner must consider Step

7   -   OPINION AND ORDER

Five.  If the medical improvement is related to the claimant's ability to work, the Commissioner must consider Step Six.  *Id*.

In Step Five, if the claimant has not medically improved or if any medical improvement is unrelated to the claimant's ability to work, the Commissioner must consider whether any of the listed exceptions to medical improvement apply.  20 C.F.R. § 404.1594(d),(e),(f)(5).

In Step Six, if the claimant's medical improvement is related to the claimant's ability to work, the Commissioner must determine whether all of the claimant's current impairments in combination are severe considering their combined impact on the claimant's functional capacity.  If the claimant's combination of impairments does not significantly limit his or her ability to do basic work activities, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(6).

In Step Seven, if the claimant's current impairment or combination of impairments is severe, the Commissioner must determine whether the claimant has the residual functional capacity (RFC) to perform any past relevant work.  If a claimant can perform past relevant work, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(7).

In Step Eight, if the claimant is unable to do past relevant work, the Commissioner must determine whether the claimant can perform other work.  If a claimant can perform other work, the

claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(8).

## <u>ALJ'S FINDINGS</u>

The ALJ found the most recent decision in which Plaintiff was determined to be disabled and entitled to DIB benefits was the ALJ's opinion dated August 28, 1996.  Thus, the ALJ referred to that decision as the "comparison point decision."  Tr. 17. *See* 20 C.F.R. § 404.1594(b)(7).

At Step One, the ALJ found Plaintiff "may have" engaged in substantial gainful activity during her period of disability from October 6, 1993, through May 1, 1998.  Tr. 17.

At Step Two, the ALJ found Plaintiff suffered from the following medically determinable impairments:  "residuals of a head injury and motor vehicle accident"; ongoing daily headaches; vascular headaches; organic personality syndrome; vestibular dysfunction; and cognitive impairment with confusion, dizziness, and memory loss.  Tr. 17.

At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment as of May 1, 1998.  Tr. 18.  The ALJ concluded Plaintiff's impairments had medically improved as of May 1, 1998. Tr. 18.

At Step Four, the ALJ found Plaintiff's improvement was related to her ability to work as of May 1, 1998.  Tr. 18.

9   -   OPINION AND ORDER

At Step Six, the ALJ found Plaintiff's impairments in combination did not cause more than a minimal impact on her ability to perform basic work activities.  The ALJ, therefore, concluded Plaintiff no longer had a severe impairment or combination of impairments, and, accordingly, Plaintiff's disability ended as of May 1, 1998.  Tr. 28.

### DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected Plaintiff's testimony, (2) improperly rejected lay-witness testimony, and (3) failed to develop the record.

**I.   The ALJ did not err when he rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for rejecting Plaintiff's testimony.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not

any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's medically determinable impairments reasonably could have been expected to produce some alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  The ALJ noted the January 28, 2004, Report of Investigation by the Social Security Cooperative Disability Investigations Unit (CDI) indicated the CDI received an anonymous complaint that Plaintiff had been active in at least two businesses and several civic organizations since she had been found to be disabled.  Tr. 24, 556-71.  In the Report, the CDI found Plaintiff had an active business license for Tamoco, Inc., and she was listed as the President and Secretary of the corporation.  Tr. 24, 557.  The ALJ noted when the CDI agents questioned Plaintiff about Tamoco, Inc., she initially said her name was not on the records and the business was inactive.  When confronted with conflicting information from state records,

11  -  OPINION AND ORDER

Plaintiff said the records were erroneous.  The CDI Report also reflected Plaintiff reported $4,097 and $2,817 in earnings from self-employment in 1999 and 2000 respectively.  Tr. 24, 557.  In addition, witnesses informed CDI agents that Plaintiff volunteered for an art festival in 2003 and painted children's faces for 2-3 hours in a noisy and crowded setting without ill effects.  Witnesses also reported Plaintiff attended her son's football games with no apparent discomfort.  Tr. 24, 557-58.  In addition, Plaintiff was a member of the Chamber of Commerce, was active in the community, co-managed rental properties with her husband, and participated in her husband's home-inspection business before her divorce in 2001.  Tr. 24, 557-58.  The CDI Report included several newspaper articles from 1998 in which Plaintiff reported she was an active and participatory member in her husband's home-inspection business and that the business was busy and growing.  Tr. 24, 558.  The ALJ noted the CDI Report indicated Plaintiff told CDI agents that she lied to reporters to promote her husband's home-inspection business, but she was now telling the CDI agents the truth:  That she did very little with the business, and the business was not a success.

The ALJ found the record reflected Plaintiff had only mild problems, and many of Plaintiff's subjective claims were not supported by the objective medical evidence.  For example, the ALJ noted in April 25, 2000, Michelle Whitehead, Ph.D., conducted

a neuropsychological examination on Plaintiff and found she had
delayed memory functioning, but that she still functioned "well
in the average range of intelligence, slightly higher than prior
testing in 1994." Tr. 20, 468. Dr. Whitehead opined Plaintiff
"seem[ed] uninterested in pursuing possible treatments [and]
ha[d] resigned herself to a sedentary lifestyle with minimal
interest in pursuing employment." Tr. 468. Dr. Whitehead
reported she was "not entirely convinced [Plaintiff] is incapable
of performing work tasks. She may no longer be suited to high-
pressure store sales, but . . . [she] is capable of maintaining
employment. Current financial incentives, however, are very
strong to maintain the status quo." Tr. 468. Dr. Whitehead
assigned Plaintiff a GAF of 60-70,[2] which indicates some mild
symptoms (*e.g.*, depressed mood and mild insomnia) or some
difficulty in social, occupational, or school functioning, but
generally functioning well including some meaningful inter-
personal relationships.

The ALJ also noted Tyler M. Arkless, M.D., examined
Plaintiff on June 23, 2000, and found Plaintiff was "largely
normal." Tr. 21, 489. Dr. Arkless found Plaintiff had some
"diffuse cervico-dorsal muscle tension with slight apprehension

---

[2] The GAF scale is used to report a clinician's judgment of
the patient's overall level of functioning on a scale of 1 to
100. *Diagnostic and Statistical Manual of Mental Disorders* (4th
ed. 1994)(*DSM-IV*) at 30-32.

at the extremes of bilateral neck flexion and rotation. . . .
Multiple clinical exam tests evaluating for any instability,
nystagmus, or other problems relating to her dizziness were all
negative." Tr. 489.

Plaintiff also was seen by Sheryl Norris, M.D., her treating
physician, every six months. Plaintiff reported to her that she
received little help from medications, and, therefore, she used
only over-the-counter remedies rather than prescription
medications. Tr. 419.

The ALJ noted Gary Buchholz, M.D., performed a neuro-
psychological examination of Plaintiff in January 2004.
Tr. 22, 516-18. Dr. Buchholz reported Plaintiff did not appear
to be in any significant distress and that it was not clear why
her headaches would be totally disabling. Tr. 518. Dr. Buchholz
stated Plaintiff had some "mild stiffness," but he opined that
would not preclude her from "doing many things." Tr. 518.
Dr. Buchholz reported Plaintiff's Mini-Mental Status score was in
the normal range, and "it is not clear why [her mental status]
would totally disable her." Tr. 518.

On this record, the Court concludes the ALJ provided clear
and convincing reasons supported by substantial evidence in the
record for discrediting Plaintiff's subjective symptom testimony.

**II.  The ALJ did not err when he partially rejected the testimony
of lay witnesses.**

Plaintiff contends the ALJ improperly rejected the testimony
of three lay witnesses:  Plaintiff's daughter, Angel Darvalics;
Plaintiff's friend, Shirley Carter; and Plaintiff's mother, Mary
Fox.

Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane
to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001).  Although lay testimony is not medical
testimony, the ALJ must take it into account. *Lewis*, 236 F.3d at
511.

All of the lay witnesses testified Plaintiff suffers from
headaches and has problems with math or general comprehension
when she is suffering from a headache.  Tr. 17-27.  The ALJ
credited the lay-witness testimony to the extent that they
"surely observed [Plaintiff's] headache experiences."  Tr. 27.
The ALJ, however, rejected their testimony to the extent that it
established Plaintiff was disabled by her headaches.  Tr. 27.
The ALJ reasoned the lay witnesses did not spend a lot of time
with Plaintiff, and their statements are contradicted by

Plaintiff's medical record and evidence of Plaintiff's activities as noted in the CDI Report.

On this record, the Court concludes the ALJ did not err when he partially rejected the testimony of the lay witnesses as to the effects of Plaintiff's headaches because the ALJ gave reasons that are germane to these witnesses for doing so.

**III. Developing the Record.**

The Commissioner bears the burden to develop the record even when a claimant is represented by an attorney. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff contends the ALJ erred by failing to develop the record further as to Plaintiff's cognitive impairments. In particular, Plaintiff contends the ALJ did not request neuropsychological testing despite the suggestion of the medical expert at the April 20, 2006, hearing. Tr. 601.

The Social Security Regulations address the types of evidence that may be used to establish the existence and limiting effects of mental impairments under Listing 12.00. 20 C.F.R. pt. 404, subpt. P, app. 1. These Regulations require neuro-psychological examinations to be administered by specialists trained in neuroscience and may be used to assess the extent of

compromised brain function as it affects a wide range of brain activity.  *Id.*

At the April 20, 2006, hearing, the Medical Expert, Lee Myers, M.D., opined Plaintiff did not have any medically determinable impairment that could cause the symptoms reported by Plaintiff.  Tr. 601.  In response to the ALJ's inquiry whether there was a test that Dr. Myers believed would be helpful, Dr. Myers responded he believed a "good current neurological examination looking for the basis of the headaches" would help. Tr. 601.  The ALJ did not request further psychological testing, but instead relied on the neuropsychological examinations of Plaintiff conducted by Drs. Buchholz and Whitehead in 2004 and 2000 respectively.  The ALJ noted at the hearing that neither doctor found a medical determinable impairment that could cause Plaintiff's symptoms.  The ALJ concluded requesting a further neuropsycholocial examination would be duplicative.  Tr. 602.

There is not any evidence in the record that Drs. Buchholz and Whitehead were unqualified to conduct neuropsychological examinations or that they conducted the examinations improperly. In addition, although Dr. Buchholz conducted the neuro-psychological evaluation two years before the first hearing in this matter, the record does not reflect a change in Plaintiff's condition between 2004 and 2006.

The Court, therefore, concludes the ALJ did not err when he declined to develop the record further by requesting an additional neuropsychological examination of Plaintiff.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 2nd day of October, 2008.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge